UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

---

UNITED STATES OF AMERICA,
ex rel. ISSA CONTEH

        Plaintiff/Relator,

v.                        Civil Action No. 12-1074 (RBW)

IKON OFFICE SOLUTIONS, INC.,

        Defendant.

---

**MEMORANDUM OPINION**

The plaintiff/relator, Issa Conteh, brings this qui tam action against the defendant, IKON Office Solutions, Inc. ("IKON"), under the False Claims Act, 31 U.S.C. § 3729 (2006). See Complaint and Jury Demand ("Compl.") ¶¶ 21-32. The plaintiff/relator alleges that IKON violated the False Claims Act by falsely reporting to the Federal Deposit Insurance Company ("FDIC") that IKON provides its employees the fringe benefits mandated by the Service Contract Act, 41 U.S.C. §§ 351-358.[1] See id. ¶¶ 11-20. Currently before the Court is IKON's Motion to Dismiss under Federal Rules of Civil Procedure 12(b)(6) and 9(b) for failure to state a claim upon which relief can be granted and for failure to plead fraud with sufficient particularity. Upon careful review of the parties' submissions,[2] the Court concludes that because the

---

[1] In 2011, the Service Contract Act was recodified at 41 U.S.C. §§ 6701-6707, and the provisions relevant to this litigation were subject to stylistic revisions. See Pub. L. No. 111-350, ch. 67, 124 Stat. 3811 (2011). However, this opinion will cite to the previous version as these provisions are cited by the plaintiff/relator in his complaint.

[2] In addition to the filings already referenced, the Court considered the following filings in reaching its decision: (1) the Defendant's Memorandum of Points and Authorities in Support of Its Motion to Dismiss Plaintiff's Complaint ("Def.'s Mem."); (2) the Plaintiff's Memorandum of Points and Authorities in Support of His Opposition to Defendant's Motion to Dismiss Complaint ("Pl.'s Opp'n"); and (3) the Defendant's Reply in Support of Its Motion to Dismiss Plaintiff's Complaint ("Def.'s Reply").

plaintiff/relator does not have standing to assert any private causes of action under the Service Contract Act, his claims concerning his personal compensation for lost wages, benefits, or any other personal remuneration are dismissed with prejudice. The Court further concludes that the plaintiff/relator has failed to plead fraud with sufficient particularity as required by Rule 9(b). Therefore, IKON's motion to dismiss the plaintiff/relator's False Claims Act claim based on fraud will be dismissed without prejudice.[3]

## I. BACKGROUND

The following facts are as alleged, primarily based on information and belief, by the plaintiff/relator in his complaint. From September 2007 to November 2010, the plaintiff/relator "was employed by IKON as a Mail Clerk 2 in furtherance of IKON's contract with the FDIC." Compl. ¶ 8; Pl.'s Opp'n at 6. On May 11, 2007, prior to employing the plaintiff/relator, IKON entered into a contract with the FDIC to provide "copying and other document services . . . that required payment of specific wages and benefits [to employees] under the Service Contract Act." Compl. ¶ 1; Pl.'s Opp'n at 5. The Service Contract Act requires that private contractors: "(1) pay a 'prevailing wage' to employees who work on federal contracts; (2) contribute a certain amount to pay fringe benefits for covered employees ('health and welfare'); (3) provide covered

---

[3] A private action under the False Claims Act "may be dismissed only if the court and the Attorney General give written consent to the dismissal and their reasons for consenting." 31 U.S.C. § 3730(b)(1). Accordingly, the Court previously indicated that "[s]hould the relator or the defendant propose that this action be dismissed, settled, or otherwise discontinued, the Court will solicit the written consent of the United States before ruling or granting its approval." Order, ECF No. 8 ¶ 7. However, this provision does not apply in this circumstance because it "pertains only to voluntary dismissals, and does not prevent a court from dismissing an action, without prejudice, without obtaining the consent of the Attorney General." United States ex rel. Baggan v. DME Corp., No. 96-1983, 1997 WL 600569, at *3 n.6 (D.D.C. Sept. 22, 1997) (citing Minotti v. Lensink, 895 F.2d 100, 103-04 (2d Cir. 1990)); see also United States ex rel. Mergent Servs. v. Flaherty, 540 F.3d 89, 91 (2d Cir. 2008) ("[W]e have previously construed this provision to apply 'only in cases where a plaintiff seeks voluntary dismissal of a claim or action brought under the False Claims Act, and not where the court orders dismissal.'" (quoting Minotti, 895 F.2d at 103)). Because the plaintiff/relator is not seeking a voluntary dismissal, and since the plaintiff/relator will be granted leave to amend his complaint, the Court did not solicit the written consent of the United States before issuing this Memorandum Opinion and the Order that is issued contemporaneously with this Opinion.

employees a minimum number of paid holidays and vacation days; and (4) notify employees of their rights under the statute." Compl. ¶ 12 (citing 41 U.S.C. §§ 351(a)(1)-(4)). Prior to the plaintiff/relator's employment with IKON, he "essentially held the same position for the same contract requirements with the FDIC under four . . . previous contractors; all four . . . previous contractors provided [him] fringe benefits" in accordance with the Service Contract Act. Id. ¶ 15.

The plaintiff/relator contends that "during the life of its contract with [the] FDIC, [the d]efendant failed to provide [the p]laintiff any fringe benefits." Id. ¶ 14. Based on the plaintiff/relator's discussions "with several other employees from [the d]efendant's Arlington, Virginia facility," the plaintiff/relator ascertained that the "[d]efendant failed to pay fringe benefits to any of its approximately twenty-two . . . personnel." Id. ¶ 18. On multiple occasions the plaintiff/relator questioned his direct supervisor, Landon Johnson, and IKON's Project Manager, Ted Tuck, "regarding his non-receipt of any fringe benefits." Id. ¶ 16. During those conversations, the plaintiff/relator provided the defendant with "actual notice of the [Service Contract Act] requirement to provide fringe benefits, or, [that they] had a duty to research the issue." Id. Yet, based on "information and belief, [the d]efendant ignored [the p]laintiff's inquiries and notices," id., and from September 2007 to November 2010, IKON submitted invoices to the FDIC approximately every two weeks certifying its compliance with the terms of the contract,[4] id. ¶¶ 11, 23, 29.

---

[4] Although in his complaint the plaintiff/relator alleges that the defendant continued to submit fraudulent claims until the day he filed his complaint, see Compl. ¶¶ 11, 20, 23, in his opposition brief he only alleges that the fraud occurred between "October 2007 through 2010". Pl.'s Opp'n at 7. Therefore, the Court confines its analysis to this timeframe.

Based on these factual allegations, the plaintiff/relator filed a complaint under seal on June 29, 2012, alleging that IKON: (1) "knowingly presented, or caused to be presented, false or fraudulent claims to the United States for payment[] in violation of 31 U.S.C. §3729(a)(1) [sic],"[5] id. ¶¶ 25-26; (2) "knowingly made and used, or caused to be made or used, false statements to get false or fraudulent claims paid by the United States[] in violation of 31 U.S.C. § 3729(a)(2),"[6] id. ¶ 27; (3) conspired to "defraud[] the United States by submitting false or fraudulent claims" and by "getting falsely certified claims paid or approved[] in violation of 31 U.S.C. § 3729(a)(3)," id. ¶¶ 28, 30; and (4) "knowingly certified, implicitly and expressly, or caused to be certified invoices claiming payment[s] for satisfactory compliance with the [Service Contract Act] and the terms of the contract . . . in violation of 31 U.S.C. § 3729(a)(2)," id. ¶ 29. In addition to seeking civil penalties and treble damages under the False Claims Act, the plaintiff/relator also seeks "[c]ompensation for lost wages, benefits and other remuneration." Id. ¶¶ A-B (Prayer for Relief). On May 15, 2013, the United States declined to intervene in this case, ECF No. 7, and the Court ordered that the case be unsealed, Order, ECF No. 8. The defendant now moves to dismiss the case pursuant to Federal Rules of Civil Procedure 12(b)(6) and 9(b).

---

[5] Although Congress amended § 3729(a)(1) and renumbered it as § 3729(a)(1)(A) in 2009, see Fraud Enforcement and Recovery Act of 2009, Pub. L. No. 111-21, § 4, 123 Stat. 1617, 1621-25, the plaintiff/relator concedes that these changes are not material to his presentment claims, see Pl.'s Opp'n at 9. Accordingly, all citations to § 3729(a)(1) are to the pre-revision version.

[6] Congress amended and renumbered § 3729(a)(2) in 2009, adding a requirement that the false record or statement be "material to a false or fraudulent claim." See Fraud Enforcement and Recovery Act of 2009 § 4. This provision applies to "all claims . . . pending on or after [June 7, 2008]." Id. § 4(f). Although "members of this Court have held on multiple occasions that 'claims' refers to claims for payment, and not pending court cases," United States ex rel. Folliard v. Hewlett-Packard Co., 272 F.R.D. 31, 35 n.6 (D.D.C. 2011) (citing United States ex rel. Westrick v. Second Chance Body Armor, Inc., 709 F. Supp. 2d 52, 55 (D.D.C. 2010); United States ex rel. Bender v. N. Am. Telecomms., Inc., 686 F. Supp. 2d 46, 49 n.4 (D.D.C. 2010)), the distinction is irrelevant for purposes of this opinion.

## II. STANDARDS OF REVIEW

A Rule 12(b)(6) motion tests whether the complaint "state[s] a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss [under Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A plaintiff receives the "benefit of all inferences that can be derived from the facts alleged." Am. Nat'l Ins. Co. v. FDIC, 642 F.3d 1137, 1139 (D.C. Cir. 2011) (internal quotation marks and citation omitted). But raising a "sheer possibility that a defendant has acted unlawfully" fails to satisfy the facial plausibility requirement. Iqbal, 556 U.S. at 678. Rather, a claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw [a] reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556). While the Court must "assume [the] veracity" of any "well-pleaded factual allegations" in the complaint, conclusory allegations "are not entitled to the assumption of truth." Id. at 679.

Fraud claims, however, are also subject to the heightened pleading requirement of Rule 9(b), which provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). "Rule 9(b) is not an antithesis of Rule 8(a)'s 'short and plain statement' requirement, but rather a supplement to it." Baker v. Gurfein, 744 F. Supp. 2d 311, 315 (D.D.C. 2010) (Walton, J.) (quoting United States ex rel. Williams v. Martin-Baker Aircraft Co., 389 F.3d 1251, 1256 (D.C. Cir. 2004)). To satisfy Rule 9(b)'s heightened standard, "'the pleader [must] . . . state the time, place and content of the false misrepresentations, the fact misrepresented . . . [,] what was retained or given up as a consequence of the fraud,'" and "identify individuals allegedly involved in the fraud." Williams,

389 F.3d at 1256 (first alteration in original) (citations omitted). "Rule 9(b)'s particularity requirement serves several purposes," including ensuring that "'all defendants [have] sufficient information to allow for preparation of a response.'" Id. (citation omitted). Accordingly, in order to withstand a motion to dismiss for failure to plead a False Claims Act claim with the degree of particularity required by Rule 9(b), a "complaint must . . . provide a defendant with notice of the who, what, when, where, and how with respect to the circumstances of the fraud." Stevens v. InPhonic, Inc., 662 F. Supp. 2d 105, 114 (D.D.C. 2009) (Walton, J.) (internal quotation marks and citations omitted)).

### III. LEGAL ANALYSIS

Because the plaintiff's complaint implicates the False Claims Act, the Court begins its analysis by assessing whether the complaint complies with the heightened pleading requirement of Rule 9(b). See United States ex. rel. Totten v. Bombardier Corp., 286 F.3d 542, 551-52 (D.C. Cir. 2002) (holding that "because the False Claims Act is self-evidently an anti-fraud statute, complaints brought under it must comply with Rule 9(b)"). The defendant argues that the complaint fails to satisfy the particularity requirements of Federal Rule of Civil Procedure 9(b) because it fails to identify: (1) "a single alleged false claim . . . presented or caused to be presented by IKON, let alone who prepared it, when it was prepared or who knew it was false"; (2) "a single alleged false statement made by IKON or caused to be made by IKON to get a false claim paid—let alone who made it, when it was made[,] or who knew it to be false"; (3) "who within IKON conspired with another, or who the co-conspirator is or that any unlawful 'agreement' was entered into, let alone when such an agreement was made"; and (4) "a single IKON employee with knowledge that IKON was either submitting false claims or falsely certifying compliance with the Service Contract Act." See Def.'s Mem. at 2-3, 8-18. The

plaintiff/relator, in response, argues that because he is not required to plead evidence supporting his claim "at the early stages of litigation," the complaint adequately pleads facts with sufficient particularity. See Pl.'s Opp'n at 2-3. Construing all the facts alleged in the complaint as true, the Court now turns to the plaintiff/relator's allegations, as pleaded.

   **A. Standing**

As an initial matter, because the Service Contract Act does not create a private cause of action, Danielsen v. Burnside-Ott Aviation Training Ctr., Inc., 941 F.2d 1220, 1228-29 (D.C. Cir. 1991), the plaintiff/relator lacks standing to pursue his claims for "[c]ompensation for lost wages, benefits[,] and other remuneration" as required by the Service Contract Act,[7] Compl. ¶¶ A-B (Prayer for Relief). In Danielsen, the Circuit held that "the implication of a private right under the [Service Contract Act] would undercut the specific [administrative] remedy prescribed by Congress" and that therefore, "by all authority and reason, it is plain that the [Service Contract Act] creates no private remedy," 941 F.2d at 1228-29 (holding that a "private civil action, even couched in RICO terms, will not lie for an alleged breach of the [Service Contract Act]"). See also United States ex rel. Sutton v. Double Day Office Servs., Inc., 121 F.3d 531, 533-35 (9th Cir. 1997) (applying the Danielsen analysis and finding standing to assert the False Claims Act claim there, but noting that "[t]o the extent any of [the plaintiff/relator's] claims are for damages to himself because he was not paid [Service Contract Act]-required wages, [he] lacks standing to pursue those specific claims").

---

[7] IKON does not specifically raise the issue of the plaintiff/relator's standing. However, it is unclear from the filings whether the plaintiff/relator is asserting both a private cause of action <u>and</u> an action under the False Claims Act or just asserting a violation of the False Claims Act. See generally Compl. Because of this confusion, the Court finds it necessary to address the plaintiff/relator's lack of standing under the Service Contract Act. See ANR Pipeline Co. v. FERC, 205 F.3d 403, 407-408 (D.C. Cir. 2000) (holding that the court is obliged to question plaintiff's standing sua sponte even when defendants have not).

7

Because it is not the alleged violation of the Service Contract Act, but rather the defendant's alleged presentment of a false claim and false certification of compliance to the government for payment that implicates the False Claims Act, the plaintiff/relator has standing to bring a qui tam claim under the False Claims Act. Sutton, 121 F.3d at 355-34. However, he lacks standing to bring an action which seeks an award for alleged lost wages and benefits. Id. (finding that although "a party may not bring an action for the equivalent of damages [under the Service Contract Act] under the guise of another statute[,]" the False Claims Act "attaches liability to the claim for payment, not to the underlying activity"). Therefore, the plaintiff/relator's claim seeking compensation for lost wages and benefits is dismissed with prejudice,[8] see Compl. ¶ B.

## B. Adequacy of the Complaint

Upon review of the plaintiff/relator's False Claims Act claim alleged in his complaint, the Court concurs with the defendant that it fails to satisfy Rule 9(b)'s heightened particularity requirement. The plaintiff/relator predicates this claim on the inference that because "previous contractors [that were fulfilling the same contractual requirements with the FDIC as IKON] provided [him] fringe benefits," id. ¶ 15, and since the "[d]efendant failed to provide [him] any fringe benefits," id. ¶ 14, IKON must have fraudulently certified compliance with the Service Contract Act each time it "submitted invoices under [its] contract . . . to [the] FDIC," id. ¶ 23. However, the plaintiff/relator does not allege personal knowledge regarding the contents of the

---

[8] Although IKON does not raise the issue of the plaintiff/relator's standing explicitly, it does assert that the plaintiff/relator's lost wages claim should be dismissed as an inappropriate remedy under the False Claims Act. See Def.'s Mem. at 18. Because the plaintiff/relator does not respond to this argument in his opposition brief, is it is deemed conceded. See Lewis v. District of Columbia, No. 10-5275, 2011 WL 321711, at *1 (D.C. Cir. Feb. 2, 2011) (per curiam) ("'It is well understood in this Circuit that when a plaintiff files an opposition to a dispositive motion and addresses only certain arguments raised by the defendant, a court may treat those arguments that the plaintiff failed to address as conceded.'" (citation omitted)); see also Def.'s Reply at 10 n.3.

8

invoices nor does he allege that he has seen any invoices or spoken to anyone who has seen them. Moreover, the complaint lacks any basis to support a finding that these invoices even exist, much less that they contain false certifications. Furthermore, even if the plaintiff/relator's claims regarding the requirements of the Service Contract Act are correct,[9] and that IKON in fact falsely certified its submissions to the FDIC, the complaint lacks any information regarding who participated in the fraudulent activity and fails to identify a single false claim or statement allegedly made by that person.

### 1. Specificity Under Rule 9(b)

To satisfy Rule 9(b)'s heightened requirements, the plaintiff/relator must at least identify "the 'who, what, when, where, and how' with respect to the circumstances of the fraud." See Elemary v. Philipp Holzmann A.G., 533 F. Supp. 2d 116, 137 (D.D.C. 2008). This circuit interprets Rule 9(b) as "requir[ing] pleaders to identify [the] individuals allegedly involved in the fraud." See Williams, 389 F.3d at 1256-57 (finding a complaint lacked specificity where it "repeatedly refer[red] generally to 'management' and provide[d] a long list of names without ever explaining the role these individuals played in the alleged fraud"). To that end, the plaintiff/relator asserts that he has satisfied the identification requirement by alleging that "IKON by[] and through its officers" violated the False Claims Act. Compl. ¶ 11. Citing United States ex rel. Head v. Kane Co., 798 F. Supp. 2d 186 (D.D.C. 2011), the plaintiff/relator argues that "it is sufficient that the Plaintiff has also alleged that the fraudulent acts were committed by and through the Defendant's officers." Pl.'s Opp'n at 7 (emphasis added); see also Compl. ¶ 11.

---

[9] The Court will not consider what obligations IKON owed the plaintiff/relator with respect to fringe benefits at this time, other than to note that contractors can satisfy the Service Contract Act's requirements through various means other than through fringe benefits. See 41 U.S.C. § 351(a)(2) (2012) ("The obligation under this subparagraph may be discharged by furnishing any equivalent combinations of fringe benefits or by making equivalent or differential payments in cash under rules and regulations established by the Secretary." (emphasis added)); see also 29 C.F.R. § 4.177(a)(2012).

9

However, Head is amply distinguishable from the present case. In Head, the plaintiff/relator not only alleged that the fraudulent acts were committed by and through the respective defendant's officers, but both the plaintiff/relator and the government went on to "specifically identify those Kane Company personnel involved in perpetuating the scheme." Head, 798 F. Supp. 2d at 204 & nn.26-27. What the plaintiff/relator alleges here is by no means adequate or particular.

The plaintiff/relator indicates that he "has alleged the 'who' (IKON-officers; Ted Tuck, Landon Johnson[)]" and alleges that "information on precisely who failed to pay the fringe benefits is solely within the [d]efendant's possession and control." Pl.'s Opp'n at 7. As an initial matter, this assertion undermines the entirety of the plaintiff/relator's argument that he identified the proper individuals since now it is unclear whether he understands what "scheme" implicates the False Claims Act. There is no indication in the complaint, even read in the most liberal and generous light possible, that the plaintiff/relator is alleging that anyone at IKON created false internal records regarding the payment of fringe benefits. Therefore "information on precisely who failed to pay the fringe benefits" is inconsequential to the asserted False Claims Act violation. See Compl. ¶ 18. The "who" that the plaintiff/relator must identify is the individual who filed a claim falsely purporting to the FDIC that the fringe benefits were paid.

The plaintiff/relator mischaracterizes the complaint as identifying Ted Tuck and Landon Johnson as being involved in the purported scheme of submitting false claims to the FDIC. Rather, the complaint merely alleges that the "[p]laintiff . . . advised [Ted Tuck and Landon Johnson] that the [Service Contract Act] required [them] to provide fringe benefits." See Compl. ¶ 16. Nowhere in the complaint does the plaintiff/relator make any connection between Ted Tuck or Landon Johnson and the alleged submission of fraudulent claims to the FDIC. Simply identifying IKON employees with whom the plaintiff/relator discussed the requirements of the

10

Service Contract Act, without also connecting these individuals to the allegedly fraudulent submissions, is inadequate. See United States v. Sci. Applications Int'l Corp., 626 F.3d 1257, 1274 (D.C. Cir. 2010) (ruling that "under the [False Claims Act], 'collective knowledge' provides an inappropriate basis for proof of scienter because it effectively imposes liability, complete with treble damages and substantial civil penalties, for a type of loose constructive knowledge that is inconsistent with the Act's language, structure, and purpose").

Not only does the complaint fail to identify a single individual responsible for submitting false claims, it also fails to identify a single false claim or statement that IKON submitted to the federal government, a deficiency that is particularly problematic due to the lack of other evidence to support the plaintiff/relator's claim. "While a complaint that covers a multi-year period may not be required by Rule 9(b) to contain a detailed allegation of all facts supporting each and every instance of submission of a false claim, some information on the false claims must be included." United States ex rel. Barrett v. Columbia/HCA Healthcare Corp., 251 F. Supp. 2d 28, 35 (D.D.C. 2003) (emphasis added).

In sum, failing to identify: (1) a single individual who submitted a false claim; and (2) proof of the submission of a single false claim are omissions that doom the plaintiff/relator's complaint. See Digital Healthcare, 778 F. Supp. 2d at 53 (finding that a plaintiff/relator's failure to identify a single false claim, combined with a failure to identify anyone engaged in the fraud, were fatal deficiencies in the plaintiff/relator's case). This result is compelled because, as written, the complaint fails to adequately "provide [the] defendant with notice of the who, what, when, where, and how with respect to the circumstances of the fraud," see Stevens, 662 F. Supp. 2d at 114 (internal quotation marks and citations omitted)), and therefore fails to satisfy Rule 9(b)'s heightened particularity requirement. As filed, the plaintiff/relator's imprecise pleading

11

"fail[s] to give the compan[y] sufficient information to answer the complaint" and subjects IKON "to vague, potentially damaging accusations of fraud." See Williams, 389 F.3d at 1257; see also United States ex rel Digital Healthcare, Inc. v. Affiliated Computer Servs., Inc., 778 F. Supp. 2d 37, 53 (D.D.C. 2011).

### 2. Pleading on "Information and Belief"

In his opposition to the dismissal motion, the plaintiff/relator alleges that his complaint, which is based upon "information and belief," satisfies Rule 9(b)'s particularity requirement because IKON is in exclusive possession of "essential information" necessary to factually allege that IKON violated the False Claims Act. See Pl.'s Opp. at 8; see also Compl. ¶¶ 11, 16, 19, 20, 23. Although pleadings made upon "information and belief" generally do not satisfy the particularity requirement of Rule 9(b), United States ex rel. Davis v. District of Columbia, 591 F. Supp. 2d 30, 37 (D.D.C. 2008), "this circuit provides an avenue for plaintiffs unable to meet the particularity standard because defendants control the relevant documents—plaintiffs in such straits may allege lack of access in the complaint," Williams, 389 F.3d at 1258. Thus, "[a] relator invoking this exception must plead a lack of access to necessary information in the complaint." Davis, 591 F. Supp. 2d at 37 (emphasis added) (citing Williams, 389 F.3d at 1258).

The current iteration of the complaint fails to allege anything about lack of access, a deficiency the plaintiff/relator attempts to remedy by alleging lack of access in his opposition. See Pl.'s Opp. at 1, 8. "While it is generally understood that the complaint may not be amended by legal memoranda that are submitted as opposition to motions for dismissal . . . [,] courts have allowed, for Rule 9(b) purposes, a party to supplement its complaint through such legal memoranda . . . for the sake of judicial economy." Shekoyan v. Sibley Int'l Corp., 217 F. Supp. 2d 59, 73 (D.D.C. 2002) (Walton, J.) (citation omitted), aff'd, 409 F.3d 414 (D.C. Cir. 2005) .

"[C]ourts that have allowed a party to supplement a fraud allegation in the complaint with legal memoranda . . . have concluded that allowing such amendments was fair because, given the allegations contained in the plaintiffs' legal memoranda, the defendants had adequate notice of the specifics of the fraud claims." Id. at 74. Here, due to the complaint's other deficiencies and because the Court will grant the plaintiff/relator leave to file an amended complaint, "judicial economy" does not provide an adequate basis for the Court to consider the allegations in the opposition as the basis for denying the defendant's motion.

The defendant opposes the plaintiff/relator's requests that he be granted leave to amend his complaint. See Pl.'s Opp'n at 12. The defendant contends that the opposition merely "regurgitate[s] the vague and conclusory allegations" set forth in the complaint and asserts that granting leave to amend would be futile because the "little information" the plaintiff/relator did provide in his opposition "suggests that he was provided—and took advantage of—fringe benefits by [the d]efendant." Def.'s Reply at 4, 10.

The Court is not convinced that allowing the plaintiff/relator to amend the complaint will necessarily be futile. Federal Rule of Civil Procedure 15(a) provides that "leave to amend pleadings shall be freely given when required by justice." Shekoyan, 217 F. Supp. 2d at 74 (citing Firestone v. Firestone, 76 F.3d 1205, 1209 (D.C. Cir. 1996) (per curiam)). Further, this Court has recognized that "leave to amend is 'almost always' allowed to cure deficiencies in pleading fraud." Id. (quoting Firestone, 76 F.3d at 1209). In Digital Healthcare, for example, this Court granted the plaintiff/relator leave to amend his amended complaint because the case was "still in a relatively early procedural status and the Court [was] reluctant . . . to draw any conclusions about the futility of a hypothetical second amended complaint." Digital Healthcare, 778 F. Supp. 2d at 55-56. Here, the case is in an even earlier procedural posture, as the

plaintiff/relator has not yet filed a single amended complaint. As in Digital Healthcare, the Court hesitates at this point to reach a conclusion about the futility of a hypothetical amended complaint. See id. The Court accordingly grants the plaintiff/relator leave to amend his complaint in order to, if possible, cure the deficiencies described above.

## IV. CONCLUSION

For the reasons set forth above, the Court concludes that because the plaintiff/relator does not have standing to assert any private causes of action arising under the Service Contract Act, any claims seeking personal recovery for lost wages, benefits, or any other personal remuneration are dismissed with prejudice. The Court further concludes that the plaintiff/relator has failed to plead fraud with the degree of particularity required by the Federal Rules of Civil Procedure Rule 9(b). Therefore, IKON's motion to dismiss as it relates to its alleged violation of the False Claims Act will be granted and the plaintiff/relator's complaint is dismissed without prejudice. The Court further grants the plaintiff/relator leave to amend his complaint and instructs the plaintiff/relator that, if he intends to do so, he must file an amended complaint on or before April 18, 2014.

**SO ORDERED** this 18th day of March, 2014.[10]

---

[10] The Court will contemporaneously issue an Order consistent with this Memorandum Opinion.