## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

———————————————————— )
UNITED STATES OF AMERICA,                    )
<u>ex rel.</u> ISSA CONTEH,                          )
                                             )
                    Plaintiff/Relator,       )
                                             )
        v.                                   )        Civil Action No. 12-1074 (RBW)
                                             )
IKON OFFICE SOLUTIONS, INC.,                 )
                                             )
                    Defendant.               )
———————————————————— )

## <u>MEMORANDUM OPINION</u>

The plaintiff/relator, Issa Conteh, brings this <u>qui tam</u> action against the defendant, IKON

Office Solutions, Inc. ("IKON"), under the False Claims Act, 31 U.S.C. §§ 3729(a)(1)–(a)(3)

(2006).  <u>See</u> Amended Complaint ("Am. Compl.") ¶¶ 36–53.  The plaintiff/relator alleges that

IKON violated the False Claims Act by falsely reporting to the Federal Deposit Insurance

Company ("FDIC") that IKON provides its employees with fringe benefits as mandated by the

Service Contract Act (the "SCA"), 41 U.S.C. §§ 351–58 (2006),[1] even after being advised that it

was violating the SCA by not providing these benefits, <u>see id.</u> ¶¶ 1, 11–35.  Currently before the

Court is [IKON's] Motion to Dismiss and Request for Hearing ("Mot.") under Federal Rules of

Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted, and Rule

9(b) for failure to plead fraud with sufficient particularity.  Upon careful review of the parties'

---

[1] In 2011, the SCA was recodified at 41 U.S.C. §§ 6701–07, and the provisions relevant to this litigation were subject to stylistic revisions.  <u>See</u> Pub. L. No. 111–350, ch. 67, 124 Stat. 3811 (2011).  However, this opinion will cite to the previous version, 41 U.S.C. §§ 351–58, as these provisions are cited by the plaintiff/relator in his amended complaint and they have not been changed substantively in the recodified version.

submissions,[2] the Court concludes for the reasons below that it must grant IKON's motion to dismiss the plaintiff/relator's False Claims Act claim and deny its motion for a hearing, as a hearing is unnecessary.

## I.   BACKGROUND

The following facts are alleged by the plaintiff/relator in his amended complaint, to a large degree, based merely "on information and belief."  Am. Compl. ¶¶ 11, 26, 29, 32, 34–35, 52–53.

From September 2007 to November 2010, the plaintiff/relator "was employed by IKON as a General Clerk II in furtherance of IKON's contract with the FDIC."  Id. ¶ 8.  On or about May 11, 2007, prior to employing the plaintiff/relator, IKON entered into a contract with the FDIC to provide "copying and other document services . . . that required payment of specific wages and benefits [to employees] under the [SCA]."[3]  Id. ¶ 1.  IKON "failed to provide such wages and fringe benefits, and, after being advised of its violation of the SCA and its contract with the FDIC, [it] submitted invoices to the FDIC indicating compliance with the SCA and its contract with [the] FDIC."  Id. ¶ 1.  IKON "knowingly, . . . and in reckless disregard and/or deliberate ignorance of the truth or falsity of the information, submitted to the government, bills, invoices[,] and statements to [the] FDIC and potentially other government agencies, without regard to whether or not the billings were in compliance with the SCA . . . ."  Id. ¶ 19.

---

[2] In addition to the filings already referenced, the Court considered the following filings in reaching its decision: (1) the Defendant's Memorandum of Points and Authorities in Support of Its Motion to Dismiss Plaintiff's Complaint ("Mem."); (2) the Plaintiff's Memorandum of Points and Authorities in Support of His Opposition to Defendant's Motion to Dismiss Complaint ("Opp'n"); and (3) the Defendant's Reply in Support of Its Motion to Dismiss Plaintiff's Complaint ("Reply").

[3] The Act requires that private contractors: "(1) pay a 'prevailing wage' to employees who work on federal contracts; (2) contribute a certain amount to pay fringe benefits for covered employees ('health and welfare'); (3) provide covered employees a minimum number of paid holidays and vacation days; and (4) notify employees of their rights under the statute."  Am. Compl. ¶ 1 (citing 41 U.S.C. §§ 351(a)(1)–(4)).

Furthermore, IKON "received payment from the government in response to those billings."  Id.

Thus, IKON "misrepresented to the United States that it was in compliance with the SCA, when

it was not[;]. . . . [s]pecifically, . . . [IKON] failed to provide [the plaintiff/relator] and other

employees any fringe benefits in violation of the SCA."  Id. ¶ 20.

### A.  Facts Alleged in Paragraphs Twenty-Two Through Thirty-Five of the Amended Complaint

"From 2007 through 2010[, the plaintiff/relator] was employed by IKON on its FDIC

Contract as a General Clerk II at IKON's Arlington, Virginia facility."  Id. ¶ 22.  As a General

Clerk II, he was entitled to "wages at $15.32 per hour, and . . . Health & Welfare [fringe

benefits] [of] $3.35 per hour or $134.00 per week or $580.66 per month."  Id. ¶ 23 (first

alteration in original).  Prior to his employment with IKON, the plaintiff/relator was employed

"on the same FDIC contract requirement for four . . . other government contractors . . .  and all

previous employers paid the required SCA fringe benefits."  Id. ¶ 27.

> On several occasions during [the plaintiff/relator's] employment, [he] notified
> several IKON officials that IKON was not paying a benefit to which he and other
> employees were entitled under the SCA.  He initially brought the failure to pay [the]
> SCA['s] fringe benefits to the attention of a representative in IKON's Human
> Resources office.  When [the plaintiff/relator's] concerns were not addressed, he
> brought the matter to the attention of two . . . other IKON officials/managers: Ted
> Tuck, the contract Project Manager, and Lyndon Johnson, [the plaintiff/relator's]
> immediate supervisor.  These individuals were agents and employees of IKON.  On
> each occasion that [the plaintiff/relator] spoke to the supervisors, [he] advised them
> that the SCA required [IKON] to provide fringe benefits, and that all prior
> contractors for whom he had worked, provided fringe benefits for its employees.
> Accordingly, [IKON] had actual notice of the SCA requirement to provide fringe
> benefits, or, had a duty to research the issue.  On information and belief, [IKON]
> ignored [the plaintiff/relator's] inquiries and notices.

Id. ¶ 29.  At some unknown time, the plaintiff/relator "discussed IKON's failure/refusal to pay

fringe benefits with several other [unidentified] employees at the Arlington facility. . . . [and

they] stated that IKON was not paying them [the] required SCA fringe benefits [either]."  Id. ¶

33; see also id. ¶ 28.  "Based on these discussions, [the plaintiff/relator] concluded that IKON

was not paying any of the other twenty-one . . . employees the required SCA fringe benefits."  Id. ¶ 33.

Additionally, at some unknown time, "Mr. Johnson told [the plaintiff/relator] that he [Johnson] was responsible for collecting the time information from employees for pay purposes, and that he was also responsible for preparing and submitting IKON['s] invoices to the government."  Id. ¶ 30 (second alteration in original).  And, IKON "submitted invoices under the contract on or about every two weeks from September 2007 to at least November 2010."  Id. ¶ 38.

### B.  Procedural Background

Based on a less detailed version of the above factual allegations,[4] the plaintiff/relator filed a complaint under seal on June 29, 2012.  Compl. ¶ 25.  On May 15, 2013, the United States declined to intervene in this case, ECF No. 7, the Court ordered that the case be unsealed, Order, ECF No. 8, and subsequently granted IKON's first motion to dismiss, dismissing the original complaint without prejudice pursuant to Federal Rule of Civil Procedure 9(b), and granted the plaintiff/relator leave to amend his complaint.  United States ex rel. Conteh v. IKON Office Solutions, Inc., 27 F. Supp. 3d 80, 90 (D.D.C. 2014) (Walton, J.).  The plaintiff/relator filed his amended complaint on April 18, 2014, realleging that IKON violated the False Claims Act, 31 U.S.C. §§ 3729(a)(1)–(a)(3), Am. Compl. ¶¶ 36–53, and seeking "[j]udgment against . . . IKON for triple the damages sustained by the United States," plus civil penalties and payment of costs

---

[4] The substance of the plaintiff/relator's original complaint was identical—IKON's failure to pay its employees fringe benefits.  However, the amended complaint includes the additional allegation that "Mr. Johnson told [the plaintiff/relator] that he [Johnson] was . . . responsible for preparing and submitting IKON invoices to the government," Am. Compl. ¶ 30 (second alteration in original), whereas the original complaint only stated that "IKON by, and through its officers, knowingly submitted, caused to be submitted[,] or facilitated the submission of false and fraudulent documents to the FDIC over a period of several years," Compl. ¶ 11.  Additionally, where the amended complaint necessarily pleads a lack of access to necessary information, Am. Compl. ¶¶ 17, 34, the original complaint does not include any such allegations, see United States ex rel. Conteh v. IKON Office Solutions, Inc., 27 F. Supp. 3d 80, 89 ("The current iteration of the complaint fails to allege anything about lack of access . . . .").

and attorney's fees, id. ¶¶ A–B (Prayer for Relief).  IKON has not moved to dismiss the amended

complaint again under Federal Rules of Civil Procedure 12(b)(6) and 9(b).

## II.    STANDARDS OF REVIEW

A Rule 12(b)(6) motion tests whether the amended complaint "state[s] a claim upon

which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  "To survive a motion to dismiss [under

Rule 12(b)(6)], an amended complaint must contain sufficient factual matter, accepted as true, to

'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)

(quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  In making this assessment, a

plaintiff/relator receives the "benefit of all inferences that can be derived from the facts alleged."

Am. Nat'l Ins. Co. v. FDIC, 642 F.3d 1137, 1139 (D.C. Cir. 2011) (internal quotation marks and

citation omitted).  But raising a "sheer possibility that a defendant has acted unlawfully" fails to

satisfy the facial plausibility requirement.  Iqbal, 556 U.S. at 678.  Rather, a claim is facially

plausible "when the plaintiff[/relator] pleads factual content that allows the court to draw [a]

reasonable inference that the defendant is liable for the misconduct alleged."  Id. (citing

Twombly, 550 U.S. at 556).  While the Court must "assume [the] veracity" of any "well-pleaded

factual allegations" in the amended complaint, conclusory allegations "are not entitled to the

assumption of truth."  Id. at 679.

Fraud claims, however, are also subject to the heightened pleading requirement of Rule

9(b), which provides that "[i]n alleging fraud . . . , a party must state with particularity the

circumstances constituting fraud . . . ."  Fed. R. Civ. P. 9(b).  "Rule 9(b) is not an antithesis of

Rule 8(a)'s 'short and plain statement' requirement, but rather a supplement to it."  Baker v.

Gurfein, 744 F. Supp. 2d 311, 315 (D.D.C. 2010) (Walton, J.) (quoting United States ex rel.

Williams v. Martin-Baker Aircraft Co., 389 F.3d 1251, 1256 (D.C. Cir. 2004)).  To satisfy Rule

9(b)'s heightened standard, "'the pleader [must] . . . state the time, place and content of the false

misrepresentations, the fact misrepresented . . . [,] what was retained or given up as a

consequence of the fraud,'" and "identify individuals allegedly involved in the fraud." <u>Williams</u>,

389 F.3d at 1256 (first alteration in original) (citations omitted).  "Rule 9(b)'s particularity

requirement serves several purposes," including ensuring that "'all defendants [have] sufficient

information to allow for preparation of a response.'" <u>Id.</u> (citation omitted).  Accordingly, in

order to withstand a motion to dismiss for failure to plead a False Claims Act claim with the

degree of particularity required by Rule 9(b), an "[amended] complaint must . . . provide a

defendant with notice of the who, what, when, where, and how with respect to the circumstances

of the fraud." <u>Stevens v. InPhonic, Inc.</u>, 662 F. Supp. 2d 105, 114 (D.D.C. 2009) (Walton, J.)

(quoting <u>Anderson v. USAA Cas. Ins. Co.</u>, 221 F.R.D. 250, 253 (D.D.C. 2004) (quoting <u>DiLeo</u>

<u>v. Ernst & Young</u>, 901 F.2d 624, 627 (7th Cir. 1990), <u>cert. den'd</u>, 498 U.S. 941 (1990))).

### III.     LEGAL ANALYSIS

The plaintiff/relator's amended complaint alleges three violations of the False Claims

Act, which necessarily implicates the heightened pleading requirement of Rule 9(b).  <u>United</u>

<u>States ex rel. Totten v. Bombardier Corp.</u>, 286 F.3d 542, 551–52 (D.C. Cir. 2002) ("[T]he False

Claims Act is self-evidently an anti-fraud statute, [thus,] complaints brought under it must

comply with Rule 9(b).").  Rule 9(b), among several other purposes, "safeguard[s] potential

defendants from frivolous accusations of moral turpitude." <u>United States ex rel. Head v. Kane</u>

<u>Co.</u>, 798 F. Supp. 2d 186, 193 (D.D.C. 2011); <u>see</u> <u>Shields v. Wash. Bancorporation</u>, 90–CV–

1101(RCL), 1992 WL 88004, at *4 (D.D.C. Apr. 7, 1992) ("The purposes of 9(b) are threefold:

to provide fair notice to the defendants of the claims against them, to prevent attacks on

defendants' reputations when the claim for fraud is unsubstantiated, and to prevent plaintiffs

from bringing . . . suits purely for their settlement value.").  IKON argues that the amended

complaint yet again fails to satisfy the particularity requirements of Rule 9(b) because it fails to

identify:  (1) "a single false claim or statement"; (2) "a . . . date and location" for when the

plaintiff/relator allegedly told his supervisor of IKON's violation of the Act; (3) a "link to

[IKON's employees] billing process"; (4) when IKON "caused to be submitted, or facilitated the

submission of false and fraudulent documents" beyond the vague timeframe of "several years";

and (5) any "factual allegations concerning the alleged conspiracy other than that it is between

IKON and unnamed employees."  Mem. at 2–3, 9, 12, 14.  In response, the plaintiff/relator

argues that the allegations in his amended complaint are sufficient because he has "alleged that

the relevant documents are within the control of [IKON]," Opp'n at 8, (citing Am. Compl. ¶¶ 17,

34), and therefore he has sufficiently satisfied the requirements of Rule 9 because, as drafted, his

"allegations are sufficient to put [IKON] on notice of its alleged fraud," id.  However, even

construing all of the facts alleged in the amended complaint as true, including the facts the

plaintiff/relator has alleged based on "information and belief," the Court concurs for the

following reasons with IKON that the plaintiff/relator has failed to "plead factual content that

allows the [C]ourt to draw a reasonable inference that [IKON] is liable" for violating the SCA

and thus, as pleaded, he has failed to plausibly allege a violation of the FCA.  Iqbal, 556 U.S. at

678.

### A.  IKON's Alleged Violations of the SCA

It is not the alleged underlying violation of the SCA that implicates the False Claims Act,

but rather IKON's purported:  (1) knowing presentment of false or fraudulent claims reporting

compliance with the SCA for payment or approval by the FDIC and other unknown agencies, 31

U.S.C. § 3729(a)(1) (emphasis added); and (2) making, using, or causing to be made or used,

false records or statements showing its compliance with the SCA to get false or fraudulent claims

paid or approved by the FDIC and other unknown agencies, id. § 3729(a)(2) (emphasis added).

However, the plaintiff/relator's claims can survive the motion to dismiss only if he plausibly

pleads that IKON violated the SCA by failing to provided its employees with the fringe benefits

mandated by the SCA.  See Head, 798 F. Supp. 2d. at 195 ("It is axiomatic that a

plaintiff[/relator] bringing an action for fraud under the [False Claims Act] must, first and

foremost, allege that an actual 'false claim' was presented to the [g]overnment." (citing U.S. ex

rel. Totten v. Bombardier Corp., 286 F.3d 542, 551 (D.C. Cir. 2002))).

        Pursuant to the SCA, private contractors must:  "(1) pay a 'prevailing wage' to

employees who work on federal contracts; (2) contribute a certain amount to pay fringe benefits

for covered employees ('health and welfare'); (3) provide covered employees a minimum

number of paid holidays and vacation days; and (4) notify employees of their rights under the

statute."  41 U.S.C. §§ 351(a)(1)–(4);[5] see also Am. Compl. ¶ 1.  Pursuant to IKON's contract

with the government, employees holding the position of "General Clerk II" are entitled to

"wages at $ 15.32 per hour, and . . . Health & Welfare [fringe benefits] [of] $ 3.35 per hour[,] or

$ 134.00 per week[,] or $580.66 per month."  Am. Compl ¶ 23 (citing Am. Compl., Exhibit

("Ex.") 2 ("2009 SCA Wages").  However, a contractor's obligation to provide its employees

fringe benefits "may be discharged by furnishing any equivalent combinations of fringe benefits

or by making equivalent or differential payments in cash under regulations established by the

Secretary [of Labor]."  41 U.S.C. § 351(2);[6] see also Am. Compl., Ex. 2 (2009 SCA Wages).

---

[5] Currently codified at 41 U.S.C. § 6703.

[6] Currently codified at 41 U.S.C. § 6703(2).

For the reasons discussed below, the Court agrees that the plaintiff/relator has failed to adequately plead, based on "information and belief" or otherwise, a violation of the SCA, and thus, has failed to adequately plead a violation of the False Claims Act.

### 1.  Pleadings Based on "Information and Belief"

Here, the plaintiff/relator's amended complaint is largely devoid of any factual support, and instead, he asserts he must plead the necessary facts to demonstrate IKON's SCA violation—"the name of each employee[,] the correct work classification, wage rate and fringe benefits provided, and [the] number of daily and weekly hours worked by each employee subject to the SCA, [("paystubs")[7]]," Am. Compl. ¶ 17—based on information and belief because this relevant information is solely "within the possession and control of IKON and not available to the [p]laintiff[/relator]," id. (emphasis omitted).  To be sure, "the Twombly plausibility standard . . . does not prevent a plaintiff[/relator] from 'pleading facts alleged upon information and belief' where the facts are peculiarly within the possession and control of the defendant, or where the belief is based on factual information that makes the inference of culpability plausible."  Arista Records, LLC v. Doe 3, 604 F.3d 110, 120 (2d Cir. 2010) (internal citations omitted); see also Williams, 389 F.3d at 1258 ("[T]his circuit provides an avenue for plaintiffs unable to meet the particularity standard because [the] defendant[] control[s] the relevant documents— plaintiff[/relators] in such straits may allege lack of access in the complaint.").  But this exception must be "construed consistent with the purpose of Rule 9(b)," so that "the filing of a complaint [is not] a pretext [used to] discover[] unknown wrongs."  Kowal v. MCI Commc'ns

---

[7] Because the plaintiff/relator refers to this information collectively in his opposition as the "paystubs," see Pl.'s Opp'n at 7, and since the paystubs that he has attached to his amended complaint include "the name of [the] employee[,] . . . , wage and fringe benefits provided, and [the] number of daily and weekly hours worked by each employee," see Am. Compl., Exhibit ("Ex.") 4 ("IKON Paystubs"), the Court will follow the plaintiff/relator's lead and refer to this information collectively as the "paystubs."

Corp., 16 F.3d 1271, 1279 n.3 (D.C. Cir. 1994).  Thus, the exception is available to a

plaintiff/relator only when the information needed to make factual allegations is "peculiarly

within the knowledge of the opposing party."  Kowal v. MCI Commc'ns Corp., No. 90-CV-2862

(JGP), 1992 WL 121378, at *6 (D.D.C. May 20, 1992) (emphasis added).  And to invoke the

exception, the plaintiff/relator is required to make "an allegation that the necessary information

lies within the defendant's control, and . . . such allegations must also be accompanied by a

statement of the facts upon which the allegations are based."  Kowal, 16 F.3d at 1279 n.3.

Neither of these conditions are satisfied here.[8]

The plaintiff/relator's assertion that he must plead the facts specific to his underlying

violation of the SCA because he lacks access to the "paystubs . . . [since] they are solely within

[IKON's] possession and control," Opp'n at 7; see also Am. Compl. ¶¶ 17, 34, is disingenuous

given that he has attached his own paystubs—some of the very documents he claims are

available only to the defendant, see Am. Compl., Ex. 4 ("IKON Paystubs").  The plaintiff/relator

simply cannot credibly assert, as he has in his amended complaint the claim, that the paystubs are

solely within the possession and control of IKON as pretext for his necessity to plead his case

based on "information and belief," while also attaching several of them to the very same

amended complaint.  And while perhaps the plaintiff/relator does not have immediate access to

the paystubs of the twenty-one other IKON employees whom he also alleges "IKON was not

---

[8] Notably, the plaintiff/relator does not allege lack of access to the documents crucial to his claim that IKON submitted or created false claims that were submitted to the government—the allegedly false documents and submissions.  See Totten, 286 F.3d at 551 (holding that the False Claims Act "attaches liability . . . not to [the] underlying fraudulent activity, but to the claim for payment.") (emphasis added) (citation and internal quotations omitted).

paying . . . the required SCA fringe benefits,"[9] Am. Compl. ¶ 33; <u>see also id.</u> ¶ 26, he has not

provided a "statement of facts upon which his allegations" that the paystubs of those other

unidentified employees lay peculiarly "within [IKON's] control," as opposed to with those other

unknown employees, <u>Kowal</u>, 16 F.3d at 1279 n.3.

### 2.   The Exhibits Attached to the Plaintiff/Relator's Amended Complaint

In addition to the plaintiff/relator's failures to adequately plead lack of access to

necessary documents "that would show whether the required benefits were paid," Am. Compl. ¶

17, his amended complaint also fails because his allegations are directly contradicted by his own

exhibits.  As pleaded, the plaintiff/relator alleges that during the relevant time period, the

Department of Labor's Wage Determination "set forth the [General Clerk II] employees' wages

at $ 15.32 per hour . . . ,"[10] Am. Compl. ¶ 23; Am. Compl., Ex. 2 ("2009 SCA Wages"), and he

further alleges that "[a]n employer may discharge its [SCA] obligations to furnish fringe benefits

by furnishing any equivalent combination of 'bona fide' fringe benefits <u>or by making equivalent</u>

<u>or differential payments in cash</u>," Am. Compl. ¶ 15 (citing 29 C.F.R. § 4.177(a)); <u>see also</u> 41

U.S.C. § 351(a)(2);[11] 29 C.F.R. § 4.177(a) (2012).  The plaintiff/relator's paystubs therefore

demonstrate that IKON was providing him with everything he alleged he was entitled to receive.

He was provided health and welfare fringe benefits in the form of both vacation and sick leave,

---

[9] The plaintiff/relator bases this claim on nonspecific discussions he purportedly had with various <u>unidentified</u> IKON employees on <u>unspecified</u> dates.  Am. Compl. ¶ 33.  Such vague assertions fail to comply with the specificity requirements of Rule 9(b).

[10] The Court notes that the pay-rate for a General Clerk II increased from $ 15.32 to $ 16.24 between 2009 and 2010. <u>Compare</u> Am. Compl., Ex. 2 (2009 SCA Wages), <u>with id.</u>, Ex. 3 (2010 SCA Wages).  However, because the only pay-rate the plaintiff/relator contends he was entitled to receive in his amended complaint is $15.32 per hour, and because he does not allege that during any part of the relevant time period IKON failed to pay him an appropriate pay-rate, and the attached wage determinations do not have an "effective date," only a "revision date," <u>see generally</u> Am. Compl., Ex. 2 (2009 SCA Wages); <u>id.</u>, Ex. 3 (2010 SCA Wages), the Court assumes, based on his pleadings, that at all relevant times, the plaintiff/relator was entitled to a pay-rate of only $15.32 per-hour, Am. Compl ¶ 23.

[11] Currently codified at 41 U.S.C. § 6703(2).

see Am. Compl., Ex. 4 (IKON Paystub) at 1 (showing that as of August 29, 2010, he had accrued 12.95 hours of sick leave and 120 hours of vacation leave); id. at 2 (showing that as of October 24, 2010, he had accrued 20.35 hours of sick leave and 120 hour of vacation leave), in addition to receiving a differential cash payment of between  $ 0.64 and $ 0.95 per hour, compare Am. Compl. ¶ 23 ("[T]he Contract . . . set forth the [plaintiff/relator's] wages at $15.32 per hour . . . ."), Am. Compl., Ex. 2 (2009 SCA Wages) (General Clerk II pay-rate of $15.32 per hour), with Am. Compl., Ex. 4 (IKON Paystubs) (showing receipt of between $16.00 and $16.31 per hour).

Although at this stage of the proceedings the Court must generally assume the truth of the plaintiff/relator's allegations that IKON was not providing its employees with fringe benefits in violation of the SCA, it "need not 'accept as true the complaint's factual allegations insofar as they contradict exhibits to the complaint' . . . ." Klay v. Panette, 758 F.3d 369, 377 (D.C. Cir. 2014) (citation omitted).  Therefore, because the plaintiff/relator's SCA allegations as pleaded are contradicted by his own exhibits, IKON's motion to dismiss both Counts One[12] and Two must be granted.

---

[12] The plaintiff/relator's first claim also fails regardless of the Court's determination that the plaintiff/relator has not plausibly pleaded an underlying violation of the SCA, because interestingly, the plaintiff/relator limits the scope of his first fraud claim to the first twenty-one and the thirty-sixth through forty-third paragraphs of his amended complaint.  See Am. Compl. ¶ 36 ("Plaintiff[/relator] incorporates by reference the allegations set forth in paragraphs [one] through [twenty-one] as if set forth fully herein.").  For this reason alone, his first claim alleging a violation of 31 U.S.C. § 3729(a)(1) ("Any person who knowingly presents, or causes to be presented, to an officer or employee of the United States Government . . . a false or fraudulent claim for payment or approval . . . is liable to the United States Government . . . ."), must fail because he specifically chose not to incorporate the paragraphs of his amended complaint containing any allegations in the realm of the specificity required by Rule 9(b).  See Am. Compl. ¶¶ 22–35 (identifying who made submissions to the government and what, if anything, that individual knew about the requirements of the SCA and IKON's purported failure to pay them).  By limiting his amended complaint to the allegations found in the incorporated paragraphs, the plaintiff/relator has completely failed to provide IKON with the "who, what, when, where, and how" notice necessary for it to respond to an allegation of fraud, Stevens, 662 F. Supp. 2d at 114, having failed to name a single individual involved in the alleged fraud, or a time when or location where the alleged fraud was perpetrated, he fails to provide the specificity required by Rule 9(b).

**B.  The Plaintiff/Relator's Claim Alleging a Violation of 31 U.S.C. § 3729(a)(3)**

Although the Court has already concluded that the plaintiff/relator has failed to adequately plead that IKON violated the SCA and thus failed to plead a violation of the False Claims Act, it will nonetheless address the plaintiff/relator's third claim, which alleges also a violation of 31 U.S.C. § 3729(a)(3).  This provision provides that "[a]ny person who conspires to defraud the Government by getting a false or fraudulent claim allowed or paid . . . is liable to the United States Government for a civil penalty . . . ."  31 U.S.C. § 3729(a)(3).  To succeed on this claim, a plaintiff/relator

> must show (1) that [IKON] conspired with one or more persons to have a fraudulent claim paid by the United States, (2) that one or more of the conspirators performed any act to have such a claim paid by the United States, and (3) that the United States suffered damages as a result of the claim.

U.S. ex rel. Westrick v. Second Chance Body Armor, Inc., 685 F. Supp. 2d 129, 140 (D.D.C. 2010).  Thus, at the motion to dismiss stage of a case, a plaintiff/relator must "identify any agreement between the parties to defraud the government."  Id. at 141 (citing United States ex rel. El Amin v. George Wash. Univ., 26 F. Supp. 2d 162, 165 (D.D.C. 1998)).  A claim fails under Rule 9(b) when there are no specific allegations of an agreement or the commission of an overt act.  Id. (citing Corsello v. Lincare, Inc., 428 F.3d 1008, 1013 (11th Cir. 2005)).  Here, the plaintiff/relator alleges, based on only information and belief, that IKON "knowingly made[,] or caused to be made[,] false statements to the FDIC certifying[,] or causing others to certify[,] that IKON [] was in compliance with the SCA . . . when . . . IKON knowingly and willfully failed to comply with the SCA . . . ."  Am. Compl. ¶ 52.  The plaintiff/relator further alleges that IKON's "[o]fficers and employees individually and collectively agreed . . . to present . . . false or fraudulent statements, billing invoices and records to the FDIC and potentially other agencies."  Id. ¶ 53 (emphasis added).

The plaintiff/relator's allegations of conspiracy, based on nothing other than conclusory assertions, fail to plead specific factual information regarding the alleged conspiracy.  Instead, the plaintiff/relator states in mere conclusory terms that employees "individually and collectively agreed" to submit fraudulent documents.  Am. Compl. ¶ 53.  However, the plaintiff/relator provides no information as to how he arrived at the conclusion that the employees collectively agreed to engage in any unlawful conduct, and whether this alleged agreement was verbal, written, implicit, or otherwise, leaving IKON to speculate as to what alleged agreement it must defend against.  See Williams, 389 F.3d at 1256.  Moreover, the amended complaint alleges no facts regarding the identity of the employees involved in this purported agreement or when it occurred, see Am. Compl. ¶ 22, rather it simply alleges that IKON employed the plaintiff/relator during the three-year period of 2007–2010, not that the alleged conspiracy occurred during this time period.  See id.  However, even if the Court could infer that the conspiracy occurred at some time during the three years when the plaintiff/relator was employed by IKON, his vague and conclusory allegations, absent any amplifying information to show that these allegations are anything more than unsubstantiated conjecture, fail to comport with the requirements of Williams.  389 F. 3d at 1252.  Additionally, the plaintiff/relator's claim that unspecified agencies may also be involved is certainly insufficient to put IKON on notice of what it must defend against.  Williams, 389 F.3d at 1256.   The vague and conclusory allegations offered in support of the plaintiff/relator leads the Court to the conclusion that he wants to engage in a fishing expedition, with the hope that he will discover incriminating information he does not possess nor has any credible reason to believe exists.  See Opp'n at 14 ("[T]he officers and agents of [IKON] may have been acting outside the scope of their employment and pursuing their personal interests

when they failed to pay the SCA fringe benefits.") (emphasis added).  Accordingly, the

plaintiff/relator has not satisfied the heightened pleading requirement of Rule 9(b).

### IV.    CONCLUSION

For the reasons set forth above, the Court concludes that the plaintiff/relator has again failed

to adequately plead his claims of fraud with the degree if particularity required by the Federal

Rule of Civil Procedure 9(b).  Accordingly, IKON's motion to dismiss will be granted and its

motion for a hearing will be denied as unnecessary.


**SO ORDERED** this 8th day of May, 2015.[13]

REGGIE B. WALTON
United States District Judge

---

[13] The Court will contemporaneously issue an Order consistent with this Memorandum Opinion.